IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| BETTY GROOMS, | ) |
|       Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 6:23-cv-03287-MDH |
| JUDGE STEVEN A. PRIVETTE, *in his individual capacity only*, and ALICE BELL, *in her individual capacity only* a/k/a Alice Privette, | ) ) ) ) ) ) |
|       Defendants. | ) |

## ORDER

Before the Court is Defendant Judge Steven Privette ("Judge Privette") and Alice Bell's ("Bell") (collectively, "Defendants") Joint Motion to Dismiss. For reasons herein, Defendants' Joint Motion to Dismiss is **GRANTED**.[1]

## BACKGROUND

Plaintiff Betty Grooms ("Grooms") was elected Clerk of the Circuit Court of Oregon County, Missouri in November 2018 and reelected in November 2022. Grooms ran for this position as a Republican. Grooms' Democratic opponent in the 2018 election was Bell. Following the 2018 election, Bell worked in the Office of the Circuit Court of Oregon County, Missouri as a deputy clerk under newly-elected Grooms until February 2022, when Bell voluntarily resigned. During November 2021, while still a deputy clerk, Bell married Judge Privette, presiding judge of Missouri's thirty-seventh Judicial Circuit, which includes Oregon County. While Plaintiff's Complaint remains somewhat unclear on timing, briefing suggests around May 2022, Judge

---

[1] Plaintiff's Motion for Extension of Time in which to respond in opposition is GRANTED. Plaintiff previously filed her opposition to Defendants' Motion to Dismiss. (Doc. 10). That response is timely and was considered in reaching these conclusions.

1

Privette asked Grooms to prepare a spreadsheet of criminal cases in Oregon County in order to track whether Missouri had adequately reimbursed Oregon County for certain expenses related to incarceration. Grooms allegedly prepared several responses to Judge Privette's request, each of which Judge Privette rejected.

Plaintiff alleges that on August 29, 2022, at the direction of Judge Privette, Howell County Assistant Prosecuting Attorney Heath Hardman filed a Motion for Contempt against Grooms in Oregon County. In response to some of Judge Privette's rulings related to the contempt proceedings, Grooms pursued writs of mandamus and prohibition against Judge Privette with the Missouri Court of Appeals and the Missouri Supreme Court. On May 16, 2023, the Missouri Supreme Court issued a permanent writ of prohibition against Judge Privette, finding, among other things, that Judge Privette "exceeded his authority by proceeding against Grooms for contempt." *State ex rel. Grooms v. Privette*, 667 S.W.3d 92, 98 (Mo. 2023). The Missouri Supreme Court reasoned that "holding Grooms in contempt for the particular shortcomings alleged is unnecessary as a safeguard to the proper functioning of the court as a judicial tribunal[.]" *Grooms* at 98 (internal citations omitted). The Supreme Court emphasized presiding judges must have the authority to seek from circuit clerks information related to reimbursement of incarceration costs. *Id*. Failure to satisfactorily provide such information, however, does not justify a presiding judge's effort to hold the clerk in contempt. *Id*.

In Grooms' view, Judge Privette's contempt proceedings against her reflect, not a response to failure to produce the required records to Judge Privette's satisfaction, but retaliation against Grooms for her win over Bell in the 2018 election. As Grooms sees it, Bell continued to view Grooms as a political rival and threat after the 2018 election. Grooms alleges that Bell resented her while Bell continued working in the Oregon County Clerk's Office under Grooms'

2

supervision, prior to Grooms' resignation in 2022. This animosity led Bell to conspire with Judge Privette, who Bell married in November 2021, to pursue the contempt charges against Grooms.

Grooms brings the present action against Judge Privette and Bell in their individual capacities, alleging violations of state and federal law. Count One cites 42 U.S.C. § 1983 and alleges violations of the First and Fourteenth Amendments of the United States Constitution. Count Two also cites 42 U.S.C. § 1983 and alleges violations of Grooms' substantive due process rights under the Fourteenth Amendment of the United States Constitution. Count Three alleges abuse of process violations under Missouri state law. Grooms seeks compensatory damages, punitive damages, and attorney's fees.

## STANDARD

A complaint must contain factual allegations that, when accepted as true, are sufficient to state a claim of relief that is plausible on its face. *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (internal citations omitted). The complaint's factual allegations must be sufficient to "raise a right to relief above the speculative level," and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 545 (2007). Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft* at 678 (*citing Twombly* at 555). When assessing a complaint for a 12(b)(6) motion, the court considers the complaint itself

and documents necessarily embraced by the pleadings. *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014) (*citing Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012)).

## ARGUMENT

### I. Grooms has inadequately alleged a requisite adverse employment action

Defendants contend that Grooms has inadequately alleged an adverse employment action to demonstrate requisite injury, as required for her First and Fourteenth Amendment free speech retaliation claim under Count One. The Supreme Court has found that certain actions from government employers (i.e. promotion, transfer, recall, and hiring decisions) related to lower-level employees can violate the free speech and association rights of those employees when those decisions are based on the party affiliation of the employees. *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 72-75 (1990). To adequately allege an adverse employment action, a plaintiff must allege the existence of "a *material* employment disadvantage, such as a change in salary, benefits, or responsibilities." *Meyers v. Starke*, 420 F.3d 738, 744 (8th Cir. 2005) (internal citations omitted). "Defined another way, an adverse employment action must effectuate a material change in the terms or conditions of ... employment." *Duffy v. McPhillips*, 276 F.3d 988, 992 (8th Cir. 2002) (internal citations omitted). "Changes in duties or working conditions that cause no materially significant disadvantage ... are insufficient to establish the adverse conduct required to make a prima facie case." *Meyers* at 744 (internal citations omitted). Recently, the Supreme Court held, in the context of an alleged discriminatory transfer under Title VII, plaintiffs need not show harm suffered proved significant, but merely that the plaintiff was treated worse. *Muldrow v. City of St. Louis, Missouri*, 144 S. Ct. 967, 974 (2024). In *Muldrow*, the Supreme Court acknowledged that the phrase "terms or conditions," at least in the context of Title VII, is not narrow in the "contractual sense" and "covers more than the economic or tangible." *Id*. (internal citations

4

omitted). At the same time, the Court reaffirmed that "a transferee must show some harm respecting an identifiable term or condition of employment." *Id*.

In the present case, Grooms has alleged, in response to Grooms' affiliation with the Republican party, Bell and Judge Privette initiated against Grooms, the contempt proceeding, which was eventually dismissed by the Missouri Supreme Court's issuance of a writ of prohibition. Grooms alleges she spent significant resources defending the contempt proceeding at both the Missouri Court of Appeals and the Missouri Supreme Court. There is no allegation, however, Judge Privette ever held Grooms in contempt. Nor is there any allegation Judge Privette's alleged effort to hold Grooms in contempt, ever specifically impacted any condition of Grooms' employment. Even a liberal read of Grooms' complaint suggests the only nexus between the contempt proceeding and Grooms' employment, is that Judge Privette's allegedly pretextual reason for initiating the contempt proceeding was Grooms' failure to produce the requested records to Judge Privette's satisfaction.

If this Court accepts as true all allegations in Grooms' complaint, which it must for 12(b)(6) purposes, the contempt proceeding in reality stemmed from personal and political rivalry and animosity between Grooms and Bell, wholly independent of any of Grooms' employment conditions. Further, though not explicitly addressed by the parties, it remains unclear from the complaint that Grooms, herself an elected official, is the type of lower-level employee for whom certain employment actions may constitute constitutional violations. *See Elrod v. Burns,* 427 U.S. 347, 367 (1976) (patronage dismissals of public employees constitutionally impermissible for non-policymaking positions). For these reasons, Grooms has failed to adequately allege the requisite adverse employment action under her Count One retaliation claim.

## II. Grooms lacks sufficient interest in performing her duties as a clerk

Under Count Two, Grooms alleges violation of substantive due process rights under the Fourteenth Amendment of the United States Constitution. Specifically, Grooms alleges that the conspiracy to initiate contempt proceedings against her, perpetuated by Bell and Judge Privette, deprived her of "a property interest in performing the terms of elected Clerk of the Circuit Court from January 1, 2019 through December 31, 2026." (Doc. 1 at ¶ 61). Grooms also alleges she possesses a liberty interest in the same. *Id*.

As Defendants argue, however, as an elected official, Grooms lacks the requisite property interest in her position as Oregon County Clerk of Court. *Franzwa v. City of Hackensack*, 567 F. Supp. 2d 1097, 1105 (D. Minn. 2008) (elected officials lack property interest in continued employment). Likewise, Missouri law does not confer such an interest on Grooms. *See O'Neil v. Baine*, 568 S.W.2d 761, 768 (Mo. 1978) ("public officers are created solely to meet the needs of the public and the incumbent has no contractual or vested right to the office.") (internal citations omitted).

Liberty interests of some government employees may be implicated when "the employer levels accusations at the employee that are so damaging as to make it difficult or impossible for the employee to escape the stigma of those charges." *Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895, 899 (8th Cir. 1994) (internal citations omitted). Such interests are not implicated, however, when "the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance." *Buchholz v. Aldaya*, 210 F.3d 862, 866 (8th Cir. 2000).

In the present case, Grooms' complaint leaves no room for doubt that Judge Privette claims to have initiated the contempt proceeding specifically for failure to adequately fulfill his request

related to production of records. (Doc. 1 at ¶ 39). Taking this allegation as true, it is plain that Judge Privette's stated reason for initiating the contempt proceeding does not yield the necessary stigma to "seriously damage [Grooms'] standing and associations within the community." *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972). Instead, Grooms' failure to adequately respond to Judge Privette's records request places the present matter directly into the purview of those cases in which a plaintiff has merely alleged inadequate performance. This position finds further support in the Missouri Supreme Court's finding that presiding judges must have the authority to seek from circuit clerks information related to reimbursement of incarceration costs. *State ex rel. Grooms v. Privette*, 667 S.W.3d 92, 98 (Mo. 2023). Grooms' allegation that Judge Privette's stated reason for the contempt proceedings is merely pretext for political animosity toward Grooms further supports this conclusion, as it is rather inconceivable a Judge's abuse of his authority for political purposes would somehow irreparably harm Grooms, the target of that abuse.

More fundamentally, however, the complaint is entirely unclear as to how Grooms believes the contempt proceeding has taken from her any property or liberty interested associated with her role as clerk. As discussed above, Grooms' complaint lacks any allegation regarding an adverse employment action that would enable this Court to conclude a constitutional violation has occurred. For these reasons, Grooms' Count Two allegation of a Fourteenth Amendment violation is dismissed.

### III. Judge Privette and Bell are entitled to qualified immunity

Defendants argue they are entitled to immunity from Grooms' lawsuit under the doctrines of judicial,[2] official,[3] and qualified immunity. Judges typically enjoy immunity from suit for judicial acts. *Rockett as next friend of K.R. v. Eighmy*, 71 F.4th 665, 668-70 (8th Cir. 2023). This immunity does not apply, however, in two circumstances: "1) when a judge takes 'nonjudicial actions'; and (2) when the action is judicial, but is done 'in the complete absence of all jurisdiction.' *Rockett* at 670 (*citing Mireles v. Waco*, 502 U.S. 9, 11–12 (1991)). Judicial immunity does not bar suit against Defendants in this case, because the Missouri Supreme Court found the contempt proceedings Judge Privette initiated against Grooms did not constitute judicial acts that impacted the court's ability to "try and determine cases in controversy." *Grooms* at 98 (cleaned up). Because Judge Privette exceeded the bounds of his judicial authority in initiating the contempt proceedings against Grooms, judicial immunity proves unavailable. Accordingly, such immunity is likewise unavailable for Bell by extension.

Discussing qualified immunity, the Supreme Court has held, "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Mitchell v. Shearrer*, 729

---

[2] Defendants' briefing refers to absolute immunity and judicial immunity interchangeably. For consistency, this Court refers to the doctrine as "judicial immunity" alone.
[3] This order does not address Defendants' state-law official immunity claims, because, as described in Section IV of this order, this Court lacks jurisdiction to analyze Grooms' Count Three Missouri law allegations.

F.3d 1070, 1074 (8th Cir. 2013). A right is clearly established when the "contours of the right [are] sufficiently clear [so] that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In other words, "in the light of pre-existing law the unlawfulness must be apparent." *Id*. (citations omitted). Dismissal of claims on a 12(b)(6) motion, requires Defendants "show they are entitled to qualified immunity on the face of the complaint." *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017).

As discussed above, Grooms' complaint has failed to state a claim for constitutional violations under the First and Fourteenth Amendments, thereby rending Judge Privette and Bell entitled to qualified immunity from suit. Even if Grooms had established a constitutional violation, however, to the extent such a violation hinged on the wrongfulness of Judge Privette's contempt proceedings in response to Grooms' failure to satisfactorily produce records, this violation would not have been clearly established at the time of commission. The Missouri Supreme Court acknowledged that the particular facts of the contempt case presented, "a unique situation in which the circuit courts of Missouri are, by statute, required and authorized to complete tasks unrelated to the administration of justice" but nonetheless courts lacked "authority to enforce that directive through a contempt proceeding." *Grooms* at 99. Accordingly, Defendants are entitled to qualified immunity with respect to the federal law claims in Counts One and Two.

### IV. This Court Lacks Jurisdiction to Consider Grooms' Count Three State Law Allegation

Grooms asserted federal question jurisdiction under 28 U.S.C. § 1331 pertinent to her § 1983 claims in Counts One and Two and supplemental jurisdiction under 28 U.S.C. § 1367 for Count Three's Missouri state law claims. Because this Court has dismissed Counts One and Two above, it no longer exercises supplemental jurisdiction to consider Grooms' Count Three Missouri law claims. Accordingly, Count Three's claims are dismissed for lack of subject matter jurisdiction.

## CONCLUSION

For foregoing reasons, Defendants' Motion to Dismiss is **GRANTED**. Grooms' Counts One and Two claims are dismissed with prejudice, but Count Three is dismissed without prejudice.

**IT IS SO ORDERED.**

Dated: May 2, 2024                                                    /s/ Douglas Harpool
                                                                                   **DOUGLAS HARPOOL**
                                                                                   **United States District Judge**